IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KYLE KITCHEL, | ) | ELECTRONICALLY FILED |
| *Plaintiff*, | ) ) ) | CIVIL ACTION No.: 1:25-cv-117 |
| vs. | ) ) ) | |
| UNITED REFINING COMPANY, | ) ) | |
| *Defendant*. | ) ) | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S RULE 12(B) MOTION TO DISMISS PLAINTFF'S COMPLAINT**

Plaintiff, Kyle Kitchel, ("Plaintiff"), by and through his undersigned counsel, now files this Brief in Opposition to Defendant's Rule12(B) Motion to Dismiss Plaintiff's Complaint filed by Defendant, United Refining Co., ("Defendant"), based upon the following.

## I.     PROCEDURAL HISTORY

Plaintiff initiated this case by filing a Complaint in the United States District Court for the Western District of Pennsylvania on May 7, 2025, Case No. 1:25-cv-117 ("Complaint"). [ECF No. 1].

The Complaint alleges that Defendant denied Plaintiff a plant maintenance laborer position based upon the review of Plaintiff's criminal history record information file in violation of the Pennsylvania Criminal History Record Information Act, ("CHRIA"), 18 Pa.C.S. § 9101, *et seq*. [ECF No. 1, Count I] and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*. [ECF No. 1, Count II].

Defendant filed a Rule 12(b) Motion to Dismiss the Complaint and Brief in Support on July 10, 2025 [ECF Nos. 8, 9].

Therein, Defendant argues that Count II of Plaintiff's Complaint, alleging FCRA violations for allegedly not providing Plaintiff with information regarding his FCRA rights and a copy of his consumer report, should be dismissed because Defendant argues that Plaintiff has not suffered a concrete injury-in-fact that gives rise to Article III standing.

Defendant also contends that Count I of Plaintiff's Complaint, alleging a CHRIA violations, should be dismissed because the Court would lack supplemental jurisdiction over the state law claim, or in the alternative, Defendant argues that Plaintiff has failed to plead sufficient facts that Defendant made its decision to revoke its offer of employment based on Plaintiff's criminal history record information file.

Plaintiff now files a Response contemporaneously with this Brief in Opposition establishing that he suffered a concrete injury-in-fact giving rise to Article III standing and that he has sufficiently stated claims in which relief may be granted. Accordingly, Defendant's Rule 12(b) Motion to Dismiss the Complaint should be denied.

## II.     STANDARDS OF REVIEW

### A.  Federal Rule of Civil Procedure 12(b)1.

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a party to assert the defense of lack of subject matter jurisdiction and Rule 12(h)(3) provides that, "[i]f the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action.

"A motion to dismiss for want of standing is … properly brought pursuant to 12(b)(1) because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). Standing "is a threshold jurisdictional requirement, derived from the 'case or controversy' language of Article III of the Constitution." *Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997).

### B. Federal Rule of Civil Procedure 12(b)(6).

Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 4th 335, 340 (3d Cir. 2022); see also *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F. 3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Factual plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682.

The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

### III.   FACTS ALLEGED IN THE COMPLAINT

In or around early June of 2024, Plaintiff submitted an application (the "Application") for employment with Defendant for the position of "Plant Maintenance Laborer" (the "Position"). *See* Complaint at ¶ 18.

The duties of the Position encompassed inspection, diagnosis, troubleshooting, scheduling preventative maintenance, repair, and servicing of the plant facilities. *Id.* at ¶ 21.

Almost immediately upon submission of the Application via Defendant's website, a representative from Defendant's human resources department (the "HR Representative") telephoned Plaintiff and invited him to partake in the first step of the application process (the "Application Process") which was to undergo cognitive testing at the Facility. *Id.* at ¶ 24.

Plaintiff was further instructed by Defendant's HR Representative that if the results of the cognitive testing were positive, Plaintiff would then be required to undergo drug screening and a physical examination. Thereafter, Plaintiff authorized the Defendant to conduct a background check of his criminal history (the "Background Check"). *Id.* at ¶¶ 25, 26.

Plaintiff did, in fact, succeed in passing the cognitive testing. Additionally, Plaintiff received praise and encouragement from the HR Representative relative to his candidacy. To that end, Plaintiff was instructed to begin making arrangements with the HR Representative to undergo the drug screening and physical examination. *Id.* at ¶¶ 27, 28.

On or about June 4, 2024, Plaintiff was contacted via telephone by another employee from Defendant's human resources department, Renee Berry ("Ms. Berry"), who informed Plaintiff that they would no longer be pursuing his potential hiring. *Id.* at ¶ 29.

Specifically, Ms. Berry told Plaintiff that he was disqualified as a job applicant as a result of the reported Conviction in his Background Check (the "Background Report"). *Id.* at ¶ 30.

4

Plaintiff requested a copy of the Background Report to which Ms. Berry replied that it would be mailed to him. Although he has initiated contact several times with Ms. Berry in order to request the same, Plaintiff has not received a copy of the Background Report. *Id.* at ¶¶ 31, 32.

In December 2017, Plaintiff regrettably pled guilty to 'Unlawful Contact With Minor – Sexual Offenses' and 'Terroristic Threats w/ Int to Terrorize Another.' The plea and resulting conviction of the aforementioned charges resulted from a one-time brief, inappropriate sexual encounter Plaintiff had with a minor (the "Conviction"). *Id.* at ¶ 14.

Subsequent to the foregoing, Plaintiff served 2 ½ years in prison, without incident. Immediately upon his release, Plaintiff obtained gainful employment in Lake City, Pennsylvania, wherein he was very quickly promoted to Production Line Supervisor. *Id.* at ¶¶ 15, 16.

Additionally, Plaintiff (i) attends regular therapy sessions with a mental health professional; (ii) has not consumed any alcoholic beverages for a number of years; (iii) has been taking college courses aimed at earning his bachelor's degree in business administration; and (iv) is in an exclusive, long-term relationship with his girlfriend. *Id.* at ¶ 17.

Plaintiff avers that the Conviction was the clear reason Plaintiff's Application Process was aborted by Defendant and why Plaintiff was not hired. *Id.* at ¶ 33.

As a direct result of Defendant's actions, Plaintiff suffered actual damages, including but not limited to past and future pecuniary losses, "substantial emotional distress," and other non-pecuniary…damages. *Id.* at ¶¶ 49, 50, 62, 63, 65.

    **IV.**  **ARGUMENT IN OPPOSITION TO MOTION TO DISMISS**

**A. Plaintiff has established that he has Article III standing to bring a FCRA claim.**

To be in compliance with FCRA, an employer must provide a consumer, here, Plaintiff, with a pre-adverse action notice of his rights under the FCRA if the employer intends to take

5

adverse action with respect to the consumer, based on the results of a background check in a consumer report that is generated by a consumer reporting agency (the "Pre-Adverse Action Notice"). *See* 15 U.S. Code § 1681b(b)(3)(A).

As part of the Pre-Adverse Action Notice, the employer must also include a copy of the consumer report and "A Summary of Your Rights under the Fair Credit Reporting Act" before taking any adverse action based on information contained in the background check of a consumer report. *See* 15 U.S. Code § 1681g(c)(1)(B) (the "Consumer Report and Summary of Rights").

The purpose of providing this information is to provide the consumer with the opportunity to discuss and clarify information in a background report with the consumer reporting agency and/or employer before adverse action is taken. *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 848 F. Supp.2d 532, 537 (E.D. Pa. 2012).

FCRA imposes civil liability on persons who willfully or negligently fail to comply with its requirements. 15 U.S. Code §§ 1681n, 1681o. A finding of willful non-compliance entitles the prevailing party to (i) either actual damages suffered by the consumer or statutory damages of not less than $100.00 and not more than $1,000.00, (ii) punitive damages as the court may allow, and (iii) reasonable attorney's fees and costs of litigation. 15 U.S. Code § 1681n(a).

On the other hand, a finding of negligent non-compliance entitles the prevailing party to actual damages plus reasonable attorney's fees and costs of litigation. 15 U.S. Code § 1681o(a).

In either situation, for purposes of FCRA, the term "actual damages" includes damages for emotional distress. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 719 (3d Cir. 2010). Again, Plaintiff has alleged that he has suffered "substantial emotional distress" as a result of being denied information in violation of FCRA and CHRIA. *Id.* at ¶¶ 49, 50, 62, 63, 65.

Here, Plaintiff is asserting that Defendant violated FCRA by not providing him with a Pre-Adverse Action Notice nor a Consumer Report and Summary of Rights. *See* Complaint ¶¶ 51-57. Defendant does not dispute that it failed to do this but instead argues that Plaintiff does not have Article III standing to bring a FCRA claim as a complete defense to this lawsuit.

Article III standing requires a plaintiff to have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Crowley v. Jewish Residential Servs. Inc.*, 2025 U.S. Dist. LEXIS 73036, at *9, *citing Thorne v. Pep Boys Manny Moe & Jack Inc*., 980 F. 3d. 879, 885 (3d Cir. 2020).

Plaintiff's alleged FCRA injuries – Defendant's failure to provide a Pre-Adverse Action Notice and a Consumer Report and Summary of Rights are intangible "informational" injuries, as they turn on the nondisclosure of information. *See Crowley,* 2025 U.S. Dist. LEXIS 73036, at *10, *citing Huber v. Simon's Agency, Inc.,* 84 F.4th 132, 144-45 (3d Cir. 2023).

In the Third Circuit, to establish concreteness of informational injuries, "a plaintiff must show (1) the omission of information to which he claims entitlement, (2) adverse effects that flow from the omission, and (3) a nexus to the concrete interest Congress intended to protect by requiring disclosure of the information." *See Crowley*, 2025 U.S. Dist. LEXIS 73036, at *10, *citing George v. Rushmore Serv. Ctr., LLC*, 114 F4th 226, 236 *3d Cir. 2024). Here, the Plaintiff has done so.

First, "FCRA creates a 'substantive entitlement' to the disclosure of source information. *See Crowley*, 2025 U.S. Dist. LEXIS 73036, *10, *citing Kelly v. RealPage Inc.*, 47 F.4th 202, 214 (3d Cir. 2022); 15 U.S.C. § 1681m(a)(4) (requiring a person taking an adverse action based upon information in a consumer report to notify the consumer of their right to obtain a free copy

7

of the consumer report and to dispute the contents of the report).  Here, Defendant failed to do so as required.

Second, Defendant's failure had "adverse effects."  Plaintiff has alleged that Defendant's failure deprived Plaintiff of the opportunity to contest—or otherwise seek clarification with respect to—the manner in which the Consumer Report depicted the Conviction. *See* Complaint ¶ 54.

Without the disclosure of the required information in a Consumer Report, Plaintiff was kept in the dark as to the information in his file and was unable to ensure the fair and accurate reporting of his credit information.  *See Crowley*, 2025 U.S. Dist. LEXIS 73036, at *11; *see also Carr v. Requal. Datacorp. Inc.*, NO 22-2139, 2024 U.S. Dist. LEXIS 152357, 2024 WL 3937562, at *3 (E.D. Pa. Aug. 26, 2024).

As a direct and proximate cause of Defendant failing to provide Plaintiff with required notice and information, Plaintiff suffered not only "lost wages," but "substantial emotional distress," being an actual damage under FCRA.  *See* Complaint ¶¶ 49, 50, 55, 62, 63, 65; *see also Cortez v. Trans Union, LLC*, 617 F.3d 688, 719 (3d Cir. 2010).

Third, Defendant's omission "frustrated Congress's goals of empowering consumers to correct inaccurate information in their credit files and preventing them from being unjustly damaged because of inaccurate or arbitrary information in their credit reports." *See Crowley*, 2025 U.S. Dist. LEXIS 73036, at *11, *citing Kelly*, 47 F.4th at 215; *see also Cortez*, 617 F.3d  at 706.

FCRA's goals include addressing a consumer's inability "to know he is being damaged by an adverse credit report, the lack of access to the information in his file, [and] the difficulty in correcting inaccurate information. 15 U.S.C. § 1681, *see also Crowley*, 2025 U.S. Dist. LEXIS

73036, at *12.

The right and just conclusion is that Plaintiff suffered an injury-in-fact giving rise to Article III standing. Accordingly, Defendant's Rule 12(b) Motion to Dismiss the Complaint must be denied.

### B. Plaintiff has sufficiently stated a CHRIA violation.

As previously argued, the Court should deny Defendant's Rule 12(b) Motion to Dismiss Count I of the Complaint – Plaintiff's CHRIA claim, because Plaintiff has established that he has an injury-in-fact giving rise to Article III standing.

Defending in the alternative, the Court should also deny Defendant's Rule 12(b) Motion to Dismiss Count I of the Complaint – Plaintiff's CHRIA claim, because Plaintiff has sufficiently plead a claim in which relief may be granted.

CHRIA is a Pennsylvania statute, which, in part, "prohibits employers from arbitrarily relying on a job applicant's criminal history record information during the hiring process." *Delay v. Dollar Energy Fund*, No. 21-1037, 2023 U.S. Dist. LEXIS 77468, 2023 WL 3173985, at *9 (W.D. Pa. May 1, 2023), aff'd, No. 23-1846, 2023 U.S. App. LEXIS.

Under the CHRIA, "Criminal History Record Information" is defined as:

> Information collected by criminal justice agencies concerning individual, and arising from the initiation of a criminal proceeding, consisting of identifiable descriptions, dates and notations of arrests, indictments, information or other formal criminal charges and any dispositions arising therefrom.

18 Pa. C.S.A § 9102.

Section 9125 of CHRIA entitled "Use of records for employment," provides as follows:

> (a) General rule. - Whenever an employer is in receipt of information which is part of an employment applicant's criminal history record information file, it may use that information for the purpose of deciding whether or not to hire the applicant, only in

>accordance with this section.
>
>(b) Use of information. - Felony and misdemeanor convictions may be considered by the employer only to the extent to which they relate to the applicant's suitability for employment in the position for which he has applied.
>
>(c) Notice. - The employer shall notify in writing the applicant if the decision not to hire the applicant is based in whole or in part on criminal history record information.
>
>18 Pa. C.S.A § 9125.

Here, Plaintiff alleges that Defendant violated public policy as embodied in CHIRA by failing to hire Plaintiff based upon his Conviction. Defendant refused to consider whether the Conviction related to Defendants' suitability for employment and instead summarily terminated the Application Process and failed to hire Plaintiff. Complaint ¶¶ 39-41.

Defendant's decision to terminate the Application Process was clearly – and by Defendant's own admission – a direct result of the Conviction. As Plaintiff was an otherwise qualified candidate and was progressing to a job offer pending a drug screening (which he would have passed), the denial of Plaintiff's employment on the basis of the Conviction is wrongful and a direct violation of his rights under the CHRIA. Complaint ¶¶ 42-43.

As averred in the Complaint, Ms. Berry admitted to Plaintiff that he was disqualified as a job applicant as a result of the reported Conviction in his Background Report, and to make matters worse, Defendant failed to provide written notification to Plaintiff regarding its decision not to hire him based upon the Conviction in flagrant violation of CHRIA. Complaint ¶¶ 44-45.

The right and just conclusion is that Plaintiff has sufficiently stated a CHRIA claim and Defendant's Rule 12(b) Motion to Dismiss the Complaint must be denied.

## V.    CONCLUSION

WHEREFORE, Plaintiff, Kyle Kitchel, respectfully requests that this Honorable Court Deny Defendant's Rule 12(b)6 Motion to Dismiss the Complaint.

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date: July 31, 2025		By:	*/s/ Erik Yurkovich*
				Erik M. Yurkovich (Pa. ID No. 83432)

				The Workers' Rights Law Group, LLP
				Foster Plaza 10
				680 Andersen Drive, Suite 230
				Pittsburgh, PA 15220
				Telephone: 412.910.8057
				Facsimile: 412.910.7510
				erik@workersrightslawgroup.com

				*Counsel for Plaintiff, Kyle Kitchel*

## **CERTIFICATE OF SERVICE**

I certify that on July 31, 2025, a true and correct copy of the foregoing Brief in Opposition was served via the Court's Electronic Case Filing System on the party below.

Patrick M. Carey, Esq.
MARSHALL DENNEHEY, P.C.
*pmcarey@mdwcg.com*

*Counsel for Defendant, United Refining Co.*

*/s/ Erik Yurkovich*
Erik M. Yurkovich, Esq.